**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **Malikie Innovations Ltd. and** § | | |
| **Key Patent Innovations Ltd.,** § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | **CIVIL ACTION NO. _____** | |
| § | | |
| **Match Group, Inc.,** § | **JURY TRIAL DEMANDED** | |
| § | | |
| Defendant. § | | |
| § | | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendant Match Group, Inc. ("Match Group" or "Defendant") and, in support, allege the following:

## PARTIES

1. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, Defendant Match Group, Inc. ("Match Group") is a corporation duly organized and existing under the laws of the State of Delaware, with a headquarters in this District and a principal place of business at: 8750 North Central Expressway, Suite 1400, Dallas, Texas 75231.

4. On information and belief, Match Group holds itself out to be a leading provider of digital technologies designed to help people make "meaningful connections."[1] It has over 45 brands, including Tinder, Hinge, Match, Meec, OkCupid, Pairs, Plenty Of Fish, Azar, BLK, and more,[2] each built to spark meaningful connections for its users.

5. On information and belief, Match Group, does business in Texas and in this Judicial District, directly or through subsidiaries or intermediaries, including its facilities, partners, and others.

## PATENTS IN SUIT

6. Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 8,688,152 (the "'152 Patent"); 10,779,156 (the "'156 Patent"); 7,315,747 (the "'747 Patent"); 8,671,208 (the "'208 Patent"); and 8,175,625 (the "'625 Patent") (collectively, the "Asserted Patents").

7. BlackBerry developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to mobile devices and related software and wireless communications technology. Some of these groundbreaking inventions are described and claimed in certain of the Asserted Patents.

---

[1] *See, e.g.,* https://mtch.com/ourcompany (last accessed Feb. 13, 2025).
[2] *See, e.g.,* Form S-1, Match Group, Inc. (available at https://www.sec.gov/Archives/edgar/data/1575189/000104746915007908/a2226226zs-1.htm) (last accessed Feb. 13, 2025).

8. The '152 Patent, entitled "Method for creating a peer-to-peer immediate messaging solution without using an instant messaging server" was duly and lawfully issued on April 1, 2014. A true and correct copy of the '152 Patent is attached hereto as Exhibit 1.

9. The '156 Patent, entitled "System and methods for data communications in a wireless communication system" was duly and lawfully issued on September 15, 2020. A true and correct copy of the '156 Patent is attached hereto as Exhibit 2.

10. The '747 Patent, entitled "Handheld electronic device and associated method providing availability data in a messaging environment" was duly and lawfully issued on January 1, 2008. A true and correct copy of the '747 Patent is attached hereto as Exhibit 3.

11. The '208 Patent, entitled "System and method for adaptively routing peer-to-peer (P2P) communications" was duly and lawfully issued on March 11, 2014. A true and correct copy of the '208 Patent is attached hereto as Exhibit 4.

12. The '625 Patent, entitled "Messaging protocol/service switching methods and devices" was duly and lawfully issued on May 8, 2012. A true and correct copy of the '625 Patent is attached hereto as Exhibit 5.

13. On March 19, 2024, Malikie sent Match Group a letter (addressed to Match Group's Senior Corporate Counsel, Mr. Benjamin Setnick and Match Group's VP and Associate Counsel of Litigation & IP, Ms. Jeanette Teckman), offering a license to Malikie's patent portfolio.

14. Malikie's March 19th letter to Match Group specifically identified the '156 patent, the '152 patent, and the '747 patent, among others.

15. Malikie's March 19th letter also identified a set of exemplary Match Group products and services that Malikie believes were and are infringing these patents (on a patent-by-patent basis). Malikie's letter specifically noted that its portfolio includes patents relating to instant

messaging, gesture recognition, security, notifications, and application management and that Malikie is willing to offer Match Group a license so that it could continue its use of the patented technologies. The March 19th letter was sent via courier and e-mail.

16.     On information and belief, Match Group received Malikie's March 19th letter by courier and email.

17.     Malikie sent several emails to Match Group, following up on its March 19th letter, including emails sent in April, May, July, August, October, November, and December of 2024 and January and early February of 2025. Neither Mr. Benjamin Setnick, Ms. Jeanette Teckman, nor anyone at Match Group has responded.

18.     Malikie sent Match Group a follow up letter on February 11, 2025, identifying the '625 patent and the '208 patent, and products and services that Malikie believes were and are infringing these patents. No one from Match Group has responded to the February 11th letter.

19.     Because no one at Match Group or anyone acting on Match Group's behalf ever responded to Malikie's outreaches, Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Match Group are willfully infringing.

## JURISDICTION AND VENUE

20.     Plaintiffs incorporate by reference paragraphs 1-19 herein.

21.     This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

22. This District has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within this District giving rise to this action; transacts and conducts business, directly, and/or indirectly, in this District and the State of Texas; and transacts and conducts business with residents of this District and the State of Texas.

23. Defendant has infringed and continues to infringe the Asserted Patents within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted Patents, including without limitation products and services that, when made or used, practice one or more claims of the Asserted Patents. Defendant, directly and through affiliates, subsidiaries, and intermediaries, makes, uses, sells, licenses, offers for sale, imports, ships, distributes, advertises, markets, promotes, and/or otherwise commercializes such infringing products and services in or into this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

24. Defendant is doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States, and has committed acts of infringement in this district.

25. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports infringing products and services into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable and convenient one. Upon information and belief, Defendant has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District.

26. Defendant purposefully directs or controls the sale of the accused products and services online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products and services will be so sold in this District.  Defendant purposefully places the accused products and services—whether by itself or through subsidiaries, affiliates, or third parties—into a supply chain, knowing that the accused products and services will be sold in the United States, including Texas and in this District. Therefore, Defendant also facilitates the sale of the accused products and services in Texas.

27. Defendant utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products and services directly to consumers and other users in the U.S., including providing links via its website to online stores, distributors, and solution partners offering such products and services and related services for sale.  Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing accused products and services in Texas, including in this District.

28. This Court has personal jurisdiction over Defendant pursuant to TEX. CIV. PRAC. & REM. CODE §§ 17.041, 17.042, et seq., the Texas Long Arm Statute.

29. Match Group is doing business, either directly or through respective agents, subsidiaries, or intermediaries, on an ongoing basis in this judicial District and elsewhere in the United States and have committed acts of infringement in this District.

30. Match Group is subject to this Court's jurisdiction pursuant to due process and the Texas Long Arm Statute due at least to its substantial business activities in this State and District, including (a) its past and present infringing activities, (b) regularly doing or soliciting business in

Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods or services, including software, provided to customers in Texas.

## ASSERTED PATENTS

31.     BlackBerry was a pioneer in mobile device technology that has revolutionized the way the world lives and does business.  For example, BlackBerry developed numerous innovations around messaging techniques that improve the way a mobile device can communicate with remote servers, and improve the speed and efficiency of mobile device operation.

## FIRST CLAIM

### (Infringement of the '152 Patent)

32.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1-31 of their Complaint.

33.     The claims of the '152 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

34.     BlackBerry developed the technology in the '152 patent to solve several technical problems associated with communication and mobile devices. One technical problem was mobile devices were inadequate, in some ways, when comparing with legacy IM solutions, i.e., desktop. The small screens and limited memory in mobile stations forced users "to accept the poor performance and experience of existing IM solutions because they want or need to reach land-line users operating legacy desktop IM Solutions and have no other alternatives to select from." '152 patent, 2:1-4. Conversely, "land-line and desktop-based IM solutions fall short of what a user that is often mobile wants and needs, namely good IM functionality wherever they may be with their mobile station." '152 patent, 1:62-65.

35. BlackBerry's solution was "a peer-to-peer immediate messaging solution for mobile stations that does not utilize an instant messaging server or the like that tracks state information, such as presence and 'buddy list' information, for each mobile station." '152 patent, 1:28-32.

36. The '152 Patent is generally directed to providing immediate peer-to-peer messaging between mobile stations without requiring a server. The claims recite and are directed to the non-abstract ideas, and inventive concepts, recited in the specification.

37. Defendant has been on notice of the '152 Patent and a specific factual basis for its infringement of the '152 Patent since at least March 19, 2024.

38. On information and belief, Defendant did not take any action to stop its infringement of the '152 patent after March 19, 2024.

39. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 22 and 24 of the '152 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including devices responsible for sending or receiving messages and indicating user availability based on messaging activity with contacts in a contact list. An exemplary claim chart concerning one way in which Match Group's Tinder product infringes claims 22 and 24 of the '152 Patent is attached as Exhibit 6.

40. Defendant has also indirectly infringed, and continues to indirectly infringe, the '152 Patent under 35 U.S.C. § 271(b) and (c).

41. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 22 and 24 of the '152 Patent under 35 U.S.C. § 271(b), and

continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 6.

42. Defendant has also contributed to the direct infringement of at least claims 22 and 24 of the '152 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '152 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports devices or software that enable sending or receiving messages and indicating user availability based on messaging activity with contacts in a contact list (such as that shown in Exhibit 6) that are not a staple article of commerce and are incapable of substantial noninfringing use.

43. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

**(Infringement of the '156 Patent)**

44. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-43 of their Complaint.

45. The claims of the '156 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

46. The problem that BlackBerry solved when it developed the '156 Patent was the ability for a user to "take their mobile device from their home country or region and travel elsewhere and still receive service from a foreign network carrier." '156 Patent, 1:43-45.

47. BlackBerry enabled travelling mobile device users to gain service from a foreign network carrier. BlackBerry developed a mechanism "to forcefully, easily and automatically alter the services and/or the features offered to and the behaviour of a mobile device, or devices, based the location and abilities of the mobile device." '156 Patent, 1:58-61.

48. The '156 Patent is generally directed to enabling wireless data communications between a first and a second communications device, including providing location information and capability information associated with at least one of the first and second communications devices.

49. Defendant has been on notice of the '156 Patent and a specific factual basis for its infringement of the '156 Patent since at least March 19, 2024.

50. On information and belief, Defendant did not take any action to stop its infringement of the '156 patent after March 19, 2024.

51. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 14 and 19 of the '156 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including devices which receive notification of a message and directly communicate with the host service to retrieve the message. An exemplary claim chart concerning one way in which Match Group's Tinder product infringes claims 14 and 19 of the '156 Patent is attached as Exhibit 7.

52. Defendant has also indirectly infringed, and continues to indirectly infringe, the '156 Patent under 35 U.S.C. § 271(b) and (c).

53. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 14 and 19 of the '156 Patent under 35 U.S.C. § 271(b), and

continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 7.

54. Defendant has also contributed to the direct infringement of at least claims 14 and 19 of the '156 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '156 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports devices or software including devices which receive notification of a message and directly communicate with the host service to retrieve the message (such as that shown in Exhibit 7) that are not a staple article of commerce and are incapable of substantial noninfringing use.

55. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of the '747 Patent)

56. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-55 of their Complaint.

57. The claims of the '747 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

58. The problem that BlackBerry identified, at the time of the '747 Patent, was "the old protocol presence designations of 'available' and 'unavailable' are imprecise since such a handheld electronic device is nearly always listed as 'available', even late at night when a user clearly is not available, say, for instant messaging." '747 Patent, 2:1-5.

59. BlackBerry's goal was to "provide an improved method and apparatus for providing more accurate information regarding the availability of a user of a handheld electronic device in a messaging environment." '747 Patent, 2:12-15.

60. BlackBerry's solution to this problem was to make the availability of a user known because "communication of messages to an unavailable user wastes the time of the sender of the messages and also wastes communication bandwidth." '747 Patent, 2:9-11.

61. The '747 Patent is generally directed to providing a method of enabling communication of enhancement data between a first device and a second device, with the first device being a handheld electronic device having a wireless communication capability, and with the second device being an electronic device.

62. Defendant has been on notice of the '747 Patent and a specific factual basis for its infringement of the '747 Patent since at least March 19, 2024.

63. On information and belief, Defendant did not take any action to stop its infringement of the '747 patent after March 19, 2024.

64. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 10 and 13 of the '747 Patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including devices providing a method of helping users of a messaging service to communicate with other users by having an awareness of the relative availabilities of the other users of handheld electronic devices for messaging. An exemplary claim chart concerning one way in which Match Group's Tinder product infringes claims 10 and 13 of the '747 Patent is attached as Exhibit 8.

65. Defendant has also indirectly infringed, and continues to indirectly infringe, the '747 Patent under 35 U.S.C. § 271(b) and (c).

66. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 10 and 13 of the '747 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 8.

67. Defendant has also contributed to the direct infringement of at least claims 10 and 13 of the '747 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '747 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports devices or software including devices providing a method of helping users of a messaging service to communicate with other users by having an awareness of the relative availabilities of the other users of handheld electronic devices for messaging (such as that shown in Exhibit 8) that are not a staple article of commerce and are incapable of substantial noninfringing use.

68. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

**FOURTH CLAIM**

**(Infringement of the '208 Patent)**

69. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-68 of their Complaint.

70. The claims of the '208 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

71. The problem BlackBerry solved with the '208 Patent was determining whether a proxy server was needed when establishing a connection between two endpoints. For example, the '208 Patent states, "Server based solutions for setting up communications sessions are often useful because the registrar and proxy can implement admission control and traffic routing policies which may, for example, mitigate network congestion. On the other hand, once a server based communication session has been established between two end-points, it is often desirable to convert the session to P2P, by removing the proxy from the communication path between the involved end-points." '208 Patent, 1:30-37.

72. The '208 Patent is generally directed connecting communication devices in a network.

73. Defendant has been on notice of the '208 Patent and a specific factual basis for its infringement of the '208 Patent since at least February 11, 2025.

74. On information and belief, Defendant did not take any action to stop its infringement of the '208 patent after February 11, 2025.

75. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '208 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software that establishes a peer-to-peer connection between two devices if one is possible and establishing communication between the two devices using a proxy when a peer-to-peer connection is not possible, such as Match Group's Azar

14

product's video chat feature. An exemplary claim chart concerning one way in which Azar infringes claim 1 of the '208 Patent is attached as Exhibit 9.

76. Defendant has also indirectly infringed, and continues to indirectly infringe, the '208 Patent under 35 U.S.C. § 271(b) and (c).

77. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '208 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 9.

78. Defendant has also contributed to the direct infringement of at least claim 1 of the '208 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '208 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports devices or software that that establishes a peer-to-peer connection between two devices if one is possible and establishing communication between the two devices using a proxy when a peer-to-peer connection is not possible (such as that shown in Exhibit 9) that are not a staple article of commerce and are incapable of substantial noninfringing use.

79. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## FIFTH CLAIM

**(Infringement of the '625 Patent)**

80. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-79 of their Complaint.

81. The claims of the '625 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

82. The problem BlackBerry solved with the '625 Patent was allowing for switching communications from a first messaging protocol to a second messaging protocol. For example, devices use different messaging protocols and different messaging protocols may be preferable to different devices. As such, the '625 Patent provides for switching between messaging protocols for communications between two devices. '625 Patent, 1:62-67.

83. The '625 Patent is generally directed to changing a mode of communication from a first messaging service/protocol to a second messaging service/protocol for communications between devices.

84. Defendant has been on notice of the '625 Patent and a specific factual basis for its infringement of the '625 Patent since at least February 11, 2025.

85. On information and belief, Defendant did not take any action to stop its infringement of the '625 patent after February 11, 2025.

86. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '625 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software that switches communications between devices from a first protocol to a second protocol, such as Match Group's Azar product's video chat feature and Tinder's Face to Face Video Chat. Exemplary claim charts concerning ways in which Azar and Tinder infringe claim 1 of the '625 Patent are attached as Exhibits 10a and 10b.

87. Defendant has also indirectly infringed, and continues to indirectly infringe, the '625 Patent under 35 U.S.C. § 271(b) and (c).

88. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '625 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibits 10a and 10b.

89. Defendant has also contributed to the direct infringement of at least claim 1 of the '625 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '625 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports devices or software that switches communications between devices from a first protocol to a second protocol (such as that shown in Exhibits 10a and 10b) that are not a staple article of commerce and are incapable of substantial noninfringing use.

90. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## PRAYER FOR RELIEF

WHEREFORE, Malikie and KPI pray for judgment against Match Group as follows:

91. That Match Group has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe the Asserted Patents;

92. That Match Group's infringement of the Asserted Patents has been willful;

93. That Match Group pay Malikie and KPI damages adequate to compensate for its past infringement of the Asserted Patents, and present and future infringement of the Asserted

Patents, together with interest and costs and in no event less than a reasonably royalty under 35 U.S.C. § 284;

94. That Match Group pays prejudgment and post-judgment interest on the damages assessed;

95. That Match Group pays Malikie and KPI enhanced damages pursuant to 35 U.S.C. § 284;

96. That Match Group be ordered to pay ongoing royalties to Malikie and KPI for any post-judgment infringement of the Asserted Patents;

97. That this is an exceptional case under 35 U.S.C. § 285; and that Match Group pay Malikie and KPI's attorneys' fees and costs in this action; and

98. That Malikie and KPI be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Malikie and KPI hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Patrick Colsher*
Patrick Colsher
Khue Hoang (*pro hac vice* forthcoming)
**Reichman Jorgensen Lehman & Feldberg LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com
khoang@reichmanjorgensen.com

Matthew Berkowitz
**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300

Redwood Shores, CA 94065
(650) 623-1401
mberkowitz@reichmanjorgensen.com

Taylor Mauze (*pro hac vice* forthcoming)
Jolene Robin-McCaskill (*pro hac vice* forthcoming)
**Reichman Jorgensen Lehman & Feldberg LLP**
515 Congress Avenue, Suite 1900
Austin, TX 78701
(650) 623-1401
tmauze@reichmanjorgensen.com
jrobin-mccaskill@reichmanjorgensen.com


Of Counsel:

/s/ *Greg Love*
Greg Love
**STECKLER WAYNE & LOVE, PLLC**
107 East Main Street
Henderson, Texas 75652
Telephone: (903) 212-444
greg@stecklerlaw.com
TX Bar No. 24013060

Hon Paul D. Stickney (Ret.)
**STECKLER WAYNE & LOVE, PLLC**
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
judgestickney@stecklerlaw.com
TX Bar No. 00789924

*Attorneys for Plaintiffs Malikie Innovations Ltd.*
*and Key Patent Innovations Ltd.*